UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA TAYLOR,              ) | |
|                             ) | |
|     Petitioner,   ) | |
|                             ) | |
|   v.                  ) | No. 2:19-cv-00624-JPH-DLP |
|                             ) | |
| WARDEN,                     ) | |
|                             ) | |
|     Respondent.   ) | |

**Order Denying Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Joshua Taylor petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number WVE 19-09-0007. For the reasons explained in this Order, Mr. Taylor's habeas petition must be **denied**.

**A.     Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B. The Disciplinary Proceeding

On August 31, 2019, Indiana Department of Correction (IDOC) Correctional Sergeant H. Hall wrote a Report of Conduct charging Mr. Taylor with threatening, a violation of the IDOC's Adult Disciplinary Code offense B-213. The Report of Conduct states:

> On 8-31-19 at approximately 7:00 p.m., I, Sgt. Hall was called to the left wing of GHU via radio. When I arrived on the left wing of GHU Officer Henderson informed me that Offender Taylor, Joshua #160810 had been harassing her and making false claims against her during his rec period. Officer Henderson stated to me that Offender Taylor was repeatedly making comments about her and another staff member and threatening to turn in paperwork to get her fired for "fraternizing." I approached Offender Taylor near the stairs and ordered him to return to his cell to which he refused. Offender Taylor argued with me demanding to speak to Lt. I again ordered Offender Taylor to return to his cell for harassing Officer Henderson and told him I would discuss the situation with him once he was secured in his cell. Offender Taylor again refused becoming increasingly loud and verbally aggressive, shouting profanities and threatening to "take our jobs." I again ordered Offender Taylor to his cell to which he complied shouting the whole way. When Offender Taylor and I reached his cell door the pod officer attempted to secure the door but Offender Taylor stood between the door and frame preventing it from securing. I again ordered Taylor to step inside the cell so the door could secure. Offender Taylor complied, then shouted "yeah you better walk away Bitch!"

Dkt. 10-1.

Mr. Taylor was notified of the charge on September 5, 2019, when he received the Screening Report. Dkt. 10-2. He pled not guilty to the charge, asked for statements from Sgt. Hall and Offender Shaun White, and requested video evidence. *Id.*

The hearing officer viewed the requested video and prepared a video report, which states:

06:55:22pm - time on video - Offender Taylor, Joshua 160810 comes down the stairs and goes to the officer's desk. Officer Henderson is sitting at the desk. Offender Taylor stands at the side of the desk

06:58:01pm - Offender Taylor turns and walks away from the officer's desk. He walks over by the tables and is talking to an unknown offender

06:58:12pm - Offender Taylor turns around and walks toward the microwave area talking with an unknown offenders (sic)

2

>06:58:39pm - Offender Taylor stands around the microwave areas talking to other offenders
>
>7:00:25pm - Sgt. Hall enters the dayroom through the outside fire door, she walks over and talks with officer Henderson
>
>7:00:50pm – Offender Taylor and an unknown offender stand at the bottom of the stairs talking
>
>07:10:10pm - Sgt. Hall approaches Offender Taylor and points to his cell 20B
>
>07:01:19pm - Offender Taylor stays standing on the stairs
>
>07:01:34pm – Offender Taylor turns and goes up the stairs, Sgt. Hall follows
>
>07:01:57pm - Offender Taylor is at cell 20B, but does not enter the cell. He is standing in the doorway. Cell door tries to close but Offender Taylor is blocking the door from closing with his body
>
>07:02:04pm - Sgt. Hall appears to pull the door back open
>
>07:02:25pm - Offender Taylor enters the cell
>
>07:02:27pm - Cell 208 is secured
>
>07:02:32pm - Sgt Hall stands to the side of the door and appears to be talking through the crack in the door to Offender Taylor.
>
>07:03:00pm - Sgt Hall walks away from cell 208

Dkt. 10-6.

>A witness statement was obtained from Officer Henderson, who wrote:
>
>On 8-31-19 at approximately 7:00 p.m., I, C/O Henderson did witness Offender Taylor, Joshua #160810 yelling profanities, refusing to lock up, and threatening staff by saying "I'm going to take your jobs!"

Dkt. 10-7.

Sgt. Hall, whom Mr. Taylor requested a statement from, wrote "I did not witness the alleged conversation on 8-30-19 [sic]." Dkt. 10-8.

3

The disciplinary hearing was held on September 19, 2019. Mr. Taylor's statement was a request to drop the offense from B-213 threatening to C-348 insolence, vulgarity, or profanity to any person. Dkt. 10-5. Mr. Taylor also said that he did not threaten Officer Henderson but was quoting policy to her. *Id.* The hearing officer considered the conduct report, witness statement, Mr. Taylor's statement, and video evidence and found Mr. Taylor guilty of disorderly conduct, a violation of offense B-236 on the Adult Disciplinary Procedure, and a lessor and/or included offense of the original. *See* dkt. 10-11 (Appendix of Offenses). *Id.* The sanctions imposed included a demotion in credit-earning class.

Mr. Taylor appealed to the Facility Head and the IDOC Final Reviewing Authority, where both appeals were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Warden has filed a return to the Court's order to show cause. Dkt. 10. Mr. Taylor has filed a reply. Dkt. 14.

**C.   Analysis**

Mr. Taylor presents three grounds for habeas corpus relief. First, he argues that he was denied a witness statement when a requested witness, Mr. Taylor's cellmate, was not asked to provide a statement. Dkt. 1 at 2. Second, he argues that he was denied due process when the hearing officer would not take a second look at the video evidence to corroborate his defense. *Id.* Third, Mr. Taylor argues he was not provided 24-hours' notice of the change in the charged offense. None of the three grounds support habeas corpus relief.

**1.   Ground One**

At screening, Mr. Taylor asked for two witnesses, Sgt. Hall, whose statement was obtained, and Shaun White, who was Mr. Taylor's cellmate. Dkt. 10-2. Noted next to Mr. White's name is "(will provide)," which the hearing officer states means that Mr. Taylor would provide the

4

statement. Dkt. 10-12 (Affidavit of hearing officer). Mr. Taylor disputes this point, arguing in reply that the screening officer asked whether Mr. White would be willing to provide a statement, and Mr. Taylor replied he would. Dkt. 14 at 4. Thus, the screening officer wrote "will provide" next to Mr. White's name. *Id.*

Mr. Taylor also argues that Mr. White was present at the disciplinary hearing because they had both been charged with a different disciplinary offense and its hearing was being held at the same time. *Id.* at 5. He argues that he asked the hearing officer to hear Mr. White's statement, but the hearing officer refused. *Id.*

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

Therefore, when a prisoner challenges the denial of witnesses in a prison disciplinary proceeding, it is the prison official's burden to provide a "justification"—not a conclusion—for the denial. *Ponte v. Real*, 471 U.S. 491, 499 (1985); *see Wilson v. Davis*, 102 F. App'x 37, 38 (7th Cir. 2004) ("The burden is on the state to offer a rational explanation for the denial of an inmate's request for witnesses."). This justification may be "presented to the Court *in camera*," but it must be presented. *Ponte*, 471 U.S. at 499.

The hearing officer's affidavit does not address Mr. Taylor's contention that she denied his request to hear Mr. White's statement since he was already present in the hearing room for a different hearing. She does try to explain why a statement was not obtained from Mr. White in advance of the hearing, attributing the failure to a mistake. But even if Mr. Taylor's due process

5

rights were violated when Mr. White did not give a statement, *Piggie*, 344 F.3d at 678, the analysis would not end there.

Mr. Taylor has not stated what Mr. White's "testimony might have been or how it would have aided" his defense. *Id.* He instead urges a strict liability approach, that his disciplinary conviction must be vacated if the Warden fails to provide a valid explanation why the hearing officer did not hear Mr. White's statement. This fails to recognize that Mr. Taylor must show that Mr. White's testimony would have been material or exculpatory. *See id.* He has not done so and therefore cannot obtain habeas corpus relief on this ground.

### 2. Ground Two

Mr. Taylor's next ground for relief is based on his request that the hearing officer take another look at the video evidence to see that he did not approach Officer Henderson as stated in the conduct report. Dkt. 1 at 2. The hearing officer declined to conduct a second review of the video which Mr. Taylor argues denied him due process. *Id.* Mr. Taylor also argues that by refusing to look at the video again, the hearing officer denied him his right to an impartial decision maker. *Id.*

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

6

Here, the hearing officer's refusal to review the video again does not itself violate due process or demonstrate lack of impartiality. In her affidavit, the hearing officer states that she spent a significant amount of time reviewing the video initially, taking several looks at what was depicted. Dkt. 10-12. Indeed, the video report (set out above) reflects a very detailed study of the video. *See* dkt. 10-6. The hearing officer used a photograph of Mr. Taylor to ensure that she was correctly identifying him on the video. There is no indication that the hearing officer declined to consider material or exculpatory evidence.

This ground for relief is without merit.

### 3. Ground Three

In his third and final ground for relief, Mr. Taylor argues that his due process rights were violated when he did not receive 24-hours' notice that the charge against him would be modified to a lesser offense. Dkt. 1 at 3. It is not clear from the disciplinary hearing record whether the charge was modified in advance, or whether the hearing officer decided to convict on a lesser offense after considering the evidence.

"Indiana inmates have a protected liberty interest in their credit-earning class, and therefore are entitled to receive advance written notice of the charges against them." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations omitted). "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge," which allows "the accused to gather the relevant facts and prepare a defense." *Id.* (citations and quotation marks omitted).

The Seventh Circuit rejected an analogous argument to the one Mr. Taylor advances here in *Northern*. In that case, the petitioner's charge was changed on appeal from conspiracy and bribery to attempted trafficking of tobacco. This change did not violate due process because the written notice informing the petitioner of *the factual basis for his charge* provided the petitioner

7

with "all the information he needed to defend against the trafficking charge." *Id.* at 911. Simply put, if the facts of the initial charge are "sufficient to apprise [the petitioner] that he could be subject to a [different] charge," due process is not violated because the [inmate] is on notice that he could be subject to a different charge and has all the factual information necessary to prepare a defense against that charge. *Id.* at 910-11; *see Moshenek v. Vannatta*, 74 F. App'x 639, 641 (7th Cir. 2003) (noting that the Seventh Circuit in *Northern* held that the "notice of the original offense is sufficient where the modified charge has the same factual basis").

In this case, the conviction for insolence, vulgarity, or profanity to any person was based on the same conduct set out in the conduct report for threatening. As in *Northern*, Mr. Taylor had notice of the facts alleged against him which was all the information he needed to defend against the original charge and the modified charge as well. Finally, Mr. Taylor has not explained how his defense would have differed had he known of the change in charges, or how he was prejudiced by not having advance notice of the change. This ground for relief has no merit.

### D.     Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Taylor to the relief he seeks. Accordingly, Mr. Taylor's petition for a writ of habeas corpus must be **denied** and the action **dismissed** with prejudice.

All pending motions, if any, are **denied** as moot.

Final judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 1/28/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Joshua Taylor
160810
Wabash Valley Correctional Facility - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
Carlisle, IN 47838

Abigail Recker
Indiana Attorney General
abigail.recker@atg.in.gov

9